**Ex parte Joe Rene ELIZONDO,
Applicant.**

No. 72235.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 18, 1996.

Dissenting Opinion on Denial of
Rehearing of Judge Womack June 18, 1997.

Douglas Barlow, Beaumont, for appellant.

Paul McWilliams, Rodney Conerly, Asst. Dist. Attys., Beaumont, Charles M. Mallin, Asst. Dist. Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, Judge.

In *State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389, 397 (Tex.Crim.App. 1994), we accepted the proposition that the "execution of an innocent person would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution" and announced that this Court would begin to entertain postconviction applications for the writ of habeas corpus alleging actual innocence as an independent ground for relief. The instant cause comes to us on one such application.

In 1984, applicant was convicted in a jury trial of aggravated sexual assault. His punishment was assessed at confinement in the penitentiary for life and a fine of $10,000.00. The Ninth Court of Appeals affirmed. *Elizondo v. State*, 697 S.W.2d 65 (Tex.App.— Beaumont 1985, PDR ref'd). But last year, the witness whose testimony was mainly responsible for convicting applicant recanted. As a result, applicant has filed the instant petition alleging that newly available evidence shows him to be innocent of the crime for which he was convicted.

### I.

At the threshold, we must decide whether the Due Process Clause of the United States Constitution forbids, not just the execution, but the incarceration as well of an innocent person. We need not pause long to answer this question. Although it is sometimes said that Due Process requires an especially high level of reliability in the mechanisms leading to a death sentence, *Beck v. Alabama*, 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980), it is reasonably clear that the basis for entertaining postconviction habeas claims of actual innocence is not peculiar to capital cases. As the Supreme Court observed in *Herrera v. Collins*, upon which we based our holding in *Holmes*:

> Petitioner asserts that the Eighth and Fourteenth Amendments to the United States Constitution prohibit the execution of a person who is innocent of the crime for which he was convicted. This proposition has an elemental appeal, as would the similar proposition that the Constitution prohibits the imprisonment of one who is innocent of the crime for which he was convicted. After all, the central purpose of any system of criminal justice is to convict the guilty and free the innocent.

506 U.S. 390, 398, 113 S.Ct. 853, 859, 122 L.Ed.2d 203, 215 (1993). Thus Herrera's claim that a more exacting standard should be applied in his case because he was confined under a sentence of death was expressly rejected by the Court.

> Petitioner asserts that this case is different because he has been sentenced to

death.... [But] petitioner's claim is not that some error was made in imposing a capital sentence upon him, but that a fundamental error was made in finding him guilty of the underlying murder in the first place. It would be a rather strange jurisprudence, in these circumstances, which held that under our Constitution he could not be executed, but that he could spend the rest of his life in prison.

*Herrera*, 506 U.S. at 405, 113 S.Ct. at 863, 122 L.Ed.2d at 219–20.

These remarks represent the views of at least five justices, including Justice O'Connor who, although she filed a concurring opinion in which she was joined by Justice Kennedy, also joined the opinion of the Court. Likewise, the dissenters seem to recognize no significant difference between cases in which the death penalty has been assessed and cases in which an actually innocent person has been merely incarcerated.

Whether petitioner is viewed as challenging simply his death sentence or also his continued detention, he still is challenging the State's right to punish him.... [T]he legitimacy of punishment is inextricably entwined with guilt.

*Herrera*, 506 U.S. at 433–34, 113 S.Ct. at 878, 122 L.Ed.2d at 238 (Blackmun, J., dissenting).

We think it clear from these excerpts that the incarceration of an innocent person is as much a violation of the Due Process Clause as is the execution of such a person. It follows that claims. of actual innocence are cognizable by this. Court in a postconviction habeas corpus proceeding whether the punishment assessed is death or confinement. In either case, such claims raise issues of federal constitutional magnitude. *Ex parte Bravo*, 702 S.W.2d 189, 193 (Tex.Crim.App.1982)(habeas corpus will lie to review jurisdictional and constitutional defects in a judgment of conviction). To the extent that *Ex parte Binder*, 660 S.W.2d 103 (Tex.Crim.App.1983) and *Ex parte May*, 717 S.W.2d 84 (Tex.Crim.App.1986) are to the contrary, we expressly overrule them.

## II.

In *Holmes*, we held that "in order to be entitled to relief on a claim of factual innocence the applicant must show that based on the newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof of guilt beyond reasonable doubt." 885 S.W.2d at 398. However, no application of the standard was actually made in that case because no petition for the writ of habeas corpus was pending before this Court at that time. In the present context, therefore, a more complete explanation of this Court's role and of the criteria we use to assess the merits of an actual innocence claim is indicated.

At the outset, we perceive an anomaly in our *Holmes* opinion, which describes the ultimate criterion for relief under the actual innocence test as if our task were to decide whether the evidence of guilt could support a conviction in light of the newly discovered evidence of innocence. Such characterization is misleading because, if habeas corpus relief is to be conditioned upon a finding that no rational juror could convict the applicant after introduction of the newly discovered evidence, it becomes theoretically impossible for any habeas applicant to sustain his burden because exculpatory evidence can never outweigh inculpatory evidence under this standard of sufficiency. *See Holmes*, 885 S.W.2d at 417–18 (Clinton, J., dissenting).

When we conduct a legal sufficiency-of-the-evidence review as prescribed by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we do not weigh the evidence tending to establish guilt against the evidence tending to establish innocence. Nor do we assess the credibility of witnesses on each side. We view the evidence in a manner favorable to the verdict of guilty. In practice, this means we assume that the jury weighed lightly the exculpatory evidence and disbelieved entirely the exculpatory witnesses. We make this assumption no matter how powerful the exculpatory evidence may seem to us or how credible the defense witnesses may appear. If the inculpatory evidence standing alone is enough for rational people to believe in the guilt of the

defendant, we simply do not care how much credible evidence is on the other side.[1]

■ Of course, we have lately come to hold that the courts of appeals do have authority to conduct factual sufficiency reviews on direct appeal, and we have indicated that we also have such authority, in capital cases in which exculpatory evidence may be weighed against inculpatory evidence. *Clewis v. State*, 922 S.W.2d 126, 130 & 136 (Tex.Crim.App.1996). But this kind of evidentiary review is quite different from that in which the evidence is examined to determine whether, viewing it in a light most favorable to the verdict, any rational trier of fact could have found the defendant guilty beyond reasonable doubt. Indeed, one of the most significant differences between the so-called "factual" and the so-called "legal" or "constitutional" sufficiency-of-the-evidence standards is that the latter does not permit a weighing of inculpatory against exculpatory evidence.

■ Because, in evaluating a habeas claim that newly discovered or available evidence proves the applicant to be innocent of the crime for which he was convicted, our task is to assess the probable impact of the newly available evidence upon the persuasiveness of the State's case as a whole, we must necessarily weigh such exculpatory evidence against the evidence of guilt adduced at trial. The *Jackson v. Virginia* standard of evidentiary sufficiency is simply not appropriate to this purpose.

■ Of course, any person who has once been finally convicted in a fair trial should not be permitted to wage, and we do not permit him to wage, a collateral attack on that conviction without making an exceedingly persuasive case that he is actually innocent. It is thus entirely reasonable to insist, and we continue to insist, that an applicant for habeas relief based on a claim of actual innocence must "demonstrate that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict and that it is probable that the verdict would be different [on retrial]." *Holmes*, 885 S.W.2d at 398. But it is not reasonable to hold, and we reject the implication of *Holmes*, that confidence in a verdict is undermined only when newly discovered evidence renders the State's case legally or constitutionally insufficient for conviction.

In *Holmes*, we took this unusual expression of the standard directly from Justice Byron White's perfunctory concurring opinion in *Herrera v. Collins*. *Holmes*, 885 S.W.2d at 398–99. In that case, Herrera sought to reverse his death sentence because some witnesses came forward years later to implicate his brother. Most justices of the Supreme Court, including Justice White, refused to hold that Herrera's claim of actual innocence was independently cognizable in a federal habeas corpus proceeding. Indeed, they specifically declined to decide that ques-

---

1. The Supreme Court has recently stated that *Jackson* is not appropriate for assessing claims of actual innocence based on new evidence and coupled with a claim of constitutional error at trial. In *Schlup v. Delo*, 513 U.S. 298, 330–31, 115 S.Ct. 851, 868–69, 130 L.Ed.2d 808, 838 (1995), the Court differentiated between the *Jackson* standard and the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), which governs the miscarriage of justice inquiry applicable to a petitioner who has been sentenced to death and raises actual innocence as an exception to a showing of cause and prejudice in a successive writ. Under *Carrier*, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327, 115 S.Ct. at 867, 130 L.Ed.2d at 836. The Court explained:

  Though the *Carrier* standard requires a substantial showing, it is by no means equivalent

to the *Jackson* standard.... First, under *Jackson*, the assessment of the credibility of the witnesses is generally beyond the scope of review. In contrast, under the [*Carrier* standard] the newly presented evidence may indeed call into question the credibility of the witnesses presented at trial.... [Further,] [u]nder *Jackson*, the question whether the trier of fact has power to make a finding of guilt requires a binary response; either the trier of fact has power as a matter of law or it does not.... Thus, though under Jackson, the mere existence of sufficient evidence to convict would be determinative of petitioner's claim, that is not true under Carrier.

*Schlup*, 513 U.S. at 330–31, 115 S.Ct. at 868–69, 130 L.Ed.2d at 838 (emphasis added). Justice O'Connor also expressed the view in a separate opinion that *Jackson* "would be ill-suited as a burden of proof." *Id.* at 333, 115 S.Ct. at 870, 130 L.Ed.2d at 840 (O'Connor, concurring).

tion because the facts plainly showed Herrera to be guilty of the crime under any standard. The Court simply reasoned that, even if it were unconstitutional to execute an innocent person, it would not be unconstitutional to execute Herrera since he was not innocent.

In subscribing to this view, Justice White, writing only for himself and without elaboration, surmised that a habeas petitioner, even under the most generous standard, would at least be required to show that no rational juror could have convicted him in light of the newly discovered evidence. Clearly, what Justice White meant by this is that, to sustain a claim of actual innocence, a habeas petitioner should, at a minimum, be able to persuade the court that the new evidence raises a reasonable doubt about his guilt. According to Justice White, Herrera had not even approached this minimum level of persuasion, so it was not necessary to consider what further level of persuasion would have been required for him to prevail on the merits.

But the three justices who would have granted Herrera partial relief did address the question. Writing for these justices, Justice Blackmun argued:

> The government bears the burden of proving the defendant's guilt beyond a reasonable doubt, but once the government has done so, the burden of proving innocence must shift to the convicted defendant. The actual-innocence inquiry is therefore distinguishable from review for sufficiency of the evidence, where the question is not whether the defendant is actually innocent but whether the government has met its constitutional burden of proving the defendant's guilt beyond a reasonable doubt. When a defendant seeks to challenge the determination of guilt after he has been validly convicted and sentenced, it is fair to place on him the burden of proving his innocence, not just raising doubt about his guilt.

*Herrera*, 506 U.S. at 443, 113 S.Ct. at 883, 122 L.Ed.2d at 244 (Blackmun, J., dissenting) (citations omitted).

■ On reflection, we now acknowledge that *Jackson* is not a suitable standard for describing the applicant's burden of proof in a collateral proceeding where he does not attack the rationality of a factfinder's verdict. *See* fn 1, supra. On the other hand, Justice Blackmun's formulation, because it focuses on the applicant's burden of proof, directs the habeas court, as factfinder, to weigh the newly discovered, exculpatory evidence against the inculpatory evidence offered at trial for the purpose of determining whether it affirmatively shows the applicant to be innocent. Thus, Justice Blackmun continues:

> Because placing the burden on the petitioner to prove innocence creates a presumption that the conviction is valid, it is not necessary or appropriate to make further presumptions about the reliability of newly discovered evidence generally. Rather, the court charged with deciding such a claim should make a case-by-case determination about the reliability of the newly discovered evidence under the circumstances. The court then should weigh the evidence in favor of the prisoner against the evidence of his guilt. Obviously, the stronger the evidence of the prisoner's guilt, the more persuasive the newly discovered evidence must be.

*Id.* This is a far more fitting approach to the resolution of factual issues, focusing on the burden and quantum of proof required for an affirmative finding in the first instance rather than on the standard associated with a deferential review of that finding. Accordingly, we now hold that, in the exercise of our postconviction habeas jurisdiction under article 11.07 and 11.071 of the Code of Criminal Procedure, our job is not to review the jury's verdict but to decide whether the newly discovered evidence would have convinced the jury of applicant's innocence.

■ The further question is, what level of confidence must the habeas court have in concluding that the applicant has met his burden. Justice Blackmun and those who joined him in *Herrera* suggested that "to obtain relief on a claim of actual innocence, the petitioner must show that he is probably innocent." But the Supreme Court has since indicated that a higher standard is applicable to *Herrera*-type claims.

In *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), the petitioner raised a claim of actual innocence in an effort to bring himself within the "narrow class of cases" implicating fundamental miscarriage of justice as an exception to a showing of cause and prejudice for failure to raise the claim in an earlier writ. The Court took pains to distinguish between Schlup's claim and the claim presented by the petitioner in *Herrera*. Schlup's claim of innocence did not alone provide a basis for relief, but was tied to a showing of constitutional error at trial. Herrera's claim of actual innocence had nothing to do with the proceedings leading to his conviction; he simply claimed that execution of an innocent man would violate the Eighth Amendment. The Court expounded upon the differences between the two situations, emphasizing the greater burden that must be borne in order to prevail in a naked claim of actual innocence:

> Schlup's claim thus differs in at least two important ways from that presented in *Herrera*. First, Schlup's claim of innocence does not by itself provide a basis for relief. Instead, his claim for relief depends critically on the validity of his *Strickland* and *Brady* claims. Schlup's claim of innocence is thus "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at [404], 113 S.Ct. 853 [at 862], 122 L.Ed.2d 303; *see also* [*Schlup v. Delo*,] 11 F.3d [738], at 740 [(8th Cir. 1993)].

More importantly, a court's assumptions about the validity of the proceedings that resulted in conviction are fundamentally different in Schlup's case than in Herrera's. In *Herrera*, petitioner's claim was evaluated on the assumption that the trial that resulted in his conviction had been error-free. In such a case, when a petitioner has been "tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants," 506 U.S., at [419], 113 S.Ct. 853 [at 870], 122 L.Ed.2d 203, it is appropriate to apply an "extraordinarily high" standard of review. *Id.*, at [426], 113 S.Ct. 853

[at 874], 122 L.Ed.2d 203 (O'Connor, J., concurring).

Schlup, in contrast, accompanies his claim of innocence with an assertion of constitutional error at trial. For that reason, Schlup's conviction may not be entitled to the same degree of respect as one, such as Herrera's, that is the product of an error-free trial. Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner such as Schlup presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner may pass through the gateway and argue the merits of his underlying claims.

Consequently, Schlup's evidence of innocence need carry less of a burden. In *Herrera* (on the assumption that petitioner's claim was, in principle, legally well-founded), the evidence of innocence would have had to be strong enough to make his execution "constitutionally intolerable" *even if* his conviction was the product of a fair trial. For Schlup, the evidence must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial.

... If there were no question about the fairness of the criminal trial, a *Herrera*-type claim would have to fail unless the federal habeas court is itself convinced that those new facts unquestionably establish Schlup's innocence. On the other hand, if the habeas court were merely convinced that those new facts raised sufficient doubt about Schlup's guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error, Schlup's threshold showing of innocence would justify a review of the merits of the constitutional claims.

*Schlup*, 513 U.S. at 315–17, 115 S.Ct. at 861–62, 130 L.Ed.2d at 828–29 (footnotes omitted). This discussion makes clear that an exceedingly high standard applies to the assessment of claims of actual innocence that are not accompanied by a claim of constitutional error at trial. Where the trial has been constitutionally error-free, a conviction is entitled to the greatest respect. The habeas court must be convinced that the "new facts unquestionably establish [the applicant's] innocence." *Id.*

Accordingly, we adhere to the views of the Supreme Court, as expressed in *Schlup*, that in the case of a *Herrera*-type claim, the habeas court must be "convinced that [the] new facts unquestionably establish [the applicant's] innocence." *Schlup* did not elaborate, however, as to the level of confidence invoked by use of the phrase "unquestionably establish." But we know that it is a higher level of confidence than "more likely than not," since that is the standard applicable to *Schlup*-type claims. In the context of a *Schlup*-type claim the Supreme Court explained that a "petitioner must show that the constitutional error 'probably' resulted in the conviction of one who was actually innocent." *Id.* at 322, 115 S.Ct. at 864, 130 L.Ed.2d at 833 (setting forth *Carrier* standard, which was later held applicable to *Schlup* type claims). The Court further articulated the "probably resulted" standard as follows:

> The petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.

*Id.* at 327, 115 S.Ct. at 867, 130 L.Ed.2d at 836. The "probably resulted" and "more likely than not" language was interpreted to mean essentially the same thing. The question is, in the *Herrera*-type situation presented here, what level of confidence is required to implement the "unquestionably establish" language. We know from *Schlup* that it must be an "extraordinarily high" standard. *Id.* at 315–16, 115 S.Ct. at 861, 130 L.Ed.2d at 828. We hold that in the case of a *Herrera*-type claim of actual innocence,

> the petitioner must show *by clear and convincing evidence* that no reasonable ju-

ror would have convicted him in light of the new evidence.

In other words, we interpret the "unquestionably establish" language to mean the same thing as "clear and convincing."

It is important to remember that applicant's habeas petition in this case is not an attack on the jury's verdict. Nowhere does applicant claim that the verdict is invalid or should be invalidated. What he wants is a new trial based on newly discovered evidence which he claims proves his innocence. We have held that such a claim is cognizable in habeas corpus because punishment of an innocent person violates the Due Process Clause of the United States Constitution. *Holmes*, 885 S.W.2d 389. Consequently, if applicant can prove by clear and convincing evidence to this Court, in the exercise of its habeas corpus jurisdiction, that a jury would acquit him based on his newly discovered evidence, he is entitled to relief. We turn now to a consideration of the proof adduced for that purpose by applicant in the instant cause.

### III.

■■■ Applicant's conviction for aggravated sexual assault, the validity of which is here challenged, was based solely upon the testimony of his step-son Robert, one of the alleged victims in that case. This inculpatory testimony was given in court both by the victim himself and by the hearsay report of his step-mother and of a police officer who was dispatched to investigate the complaint made by his step-mother. A sexually explicit picture drawn by Robert at school and a sexually suggestive note written by him to one of his female classmates were also received in evidence because it was the seizure of these items by the child's teacher during class that precipitated the subsequent interrogation of Robert by his father and the police, leading eventually to the criminal prosecution of applicant for aggravated sexual assault. However, neither the drawing nor the note actually intimated that the child had been sexually abused or assaulted, either by applicant or by any other person. No other incriminating evidence was offered or received at trial.

Robert's testimony was, as might be expected, perfunctory. But it did clearly state that Robert and his younger brother were both made to view sexually explicit videotapes by their natural mother and by applicant, her husband. The children were also, according to the testimony adduced at trial, made to perform fellatio on applicant, to have oral sexual contact with their mother's breasts, and to have anal intercourse both with their mother and with applicant. They were ten and eight years old, respectively, at the time these events allegedly occurred.

It is now more than thirteen years later, and the children are grown men. Both now claim that the testimony given by Robert at trial was false. They say that their natural father relentlessly manipulated and threatened them into making such allegations against applicant in order to retaliate against their natural mother, his ex-wife, for marrying applicant years before. Of course, we cannot know beyond all doubt whether this allegation is true. Their father, who is still alive and able to testify, denies it. But their claim is not implausible on its face, and particularly given the complete lack of any other inculpatory evidence in the case, direct or circumstantial, we think that another jury hearing the evidence, including the newly discovered mature recantation of Robert's juvenile testimony, would view the new evidence as the more credible and would acquit applicant. The habeas court, which had the opportunity to view the witnesses, concluded that Robert had testified falsely at trial. The record supports a finding that the recantation in this case is more credible than the trial testimony was. Robert's recantation not only voids his trial testimony which implicated applicant, but constitutes affirmative evidence of applicant's innocence. We are convinced by clear and convincing evidence that no rational jury would convict him in light of the new evidence. Accordingly, applicant is entitled to relief.

The Director of the Texas Department of Criminal Justice, Institutional Division is, therefore, ordered to return applicant to the custody of the county from which he was received so that he may answer the charges against him.

* WHITE, J., reserves the right to file a written

McCORMICK, P.J., and WHITE,* MANSFIELD, and KELLER, JJ., dissent to this opinion.

BAIRD, Judge, concurring.

In *State ex rel. Holmes v. Court of Appeals,* 885 S.W.2d 389 (Tex.Cr.App.1994), we held habeas corpus is an appropriate vehicle, in capital cases, to assert claims of factual innocence based on newly discovered evidence. *Id.,* 885 S.W.2d at 398. Today, the majority extends our holding in *Holmes* to non-capital cases. Additionally, the majority alters the *Holmes* standard and adopts the standard announced by the Supreme Court in *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Because the standard in *Holmes* was derived from *Herrera v. Collins,* 506 U.S. 390, 428–29, 113 S.Ct. 853, 875, 122 L.Ed.2d 203 (1993)(White, J., concurring), I have no problem, at this time, altering our standard to follow the Supreme Court's evolution of "actual innocence" jurisprudence. Consequently, I join the majority opinion.

I write separately to explain why I believe applicant has shown "by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence." *Ante,* 947 S.W.2d at 209, is entitled to habeas relief.

## I.

### A.   The Trial

Applicant was charged with the aggravated sexual assault of his ten-year-old stepson, Robert. At trial the State presented only four witnesses: Robert, his school teacher, his stepmother and a policeman. The testimony indicated that Robert's parents were divorced. Both later re-married and Robert lived with his father and stepmother. He visited his mother and applicant on alternating weekends. According to Robert, on these weekend visits his mother, applicant, Robert and his brother watched "dirty movies" and Robert and his brother engaged in oral sex with their mother and applicant. Robert testified that sometimes friends of his mother and applicant would participate. These matters were discovered after Rob-

opinion.

ert's teacher obtained a sexually explicit note written by Robert as well as a sexually explicit drawing. Based on this testimony applicant was convicted of aggravated sexual assault and sentenced to confinement for life and fined $10,000.00.

## B. The Habeas Application

In his writ application, applicant contended Robert's testimony was false and that there exists newly discovered evidence of innocence. The application was supported by affidavits wherein Robert and his brother stated that neither their mother nor applicant ever sexually assaulted them. Rather, their natural father forced them to make the earlier charges against their mother and applicant through threats of physical violence. The brothers stated Robert perjured himself at applicant's trial and that applicant is innocent.

## C. The Habeas Hearing

At the writ hearing, Robert and his brother testified they never engaged in sexual acts with their mother or applicant. When Robert's teacher discovered the drawing and note, she notified Robert's stepmother. After discussing the note and drawing with Robert, Robert's father notified the police and ordered both boys to state they had engaged in sexual acts with their mother and applicant. Robert's father threatened to spank the boys every day for the rest of their lives if they did not make these statements.[1] The boys were afraid of their father, who forced them to repeat their statements over and over into a tape recorder until he was satisfied. Robert's father was angry with his ex-wife and often promised to get back at her "one way or another."

The brothers testified they did not realize their mother and applicant were in prison until Robert was fifteen or sixteen years old and found a letter, written by their mother, addressed to their father. On his seventeenth birthday, Robert left his father's home. Thereafter, Robert informed the Parole Board that he lied when testifying at his mother's trial and that his mother was innocent. The brothers have maintained that

applicant and their mother are innocent since 1990.

## D. The Habeas Judge's Findings

After the hearing on this application, the habeas Judge entered, *inter alia*, the following findings of fact:

3. ... [T]he testimony of [Robert] was a critical and substantial part of the evidence upon which the conviction of applicant rested, since said child witness was the actual complaining witness who related at trial allegations of sexual assault by applicant.

4. The Court finds that newly discovered evidence exists which demonstrates the factual innocence of applicant of the offense of aggravated sexual assault of which he stands convicted in this cause.

5. ... [T]his newly discovered evidence, to-wit: the statements made by [Robert] from 1990 through the time of the evidentiary hearing in this cause creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict and that verdict would be different in a new trial.

\*　　\*　　\*　　\*　　\*　　\*

7. ... [T]he testimony by [Robert] ... is uncontroverted. The Court therefore finds by clear and convincing evidence that [Robert] testified falsely in August, 1984, at the time of the trial of this cause, and it was primarily upon the false testimony of [Robert] that applicant was convicted in this cause.

8. The Court finds that if a jury were to consider the entire record of testimony and evidence before the original jury that rendered the verdict in this cause, and the newly discovered evidence ... no rational trier of fact could find proof of guilt beyond a reasonable doubt.

9. The Court further finds that the newly discovered evidence ... was necessarily unknown to applicant at the time of trial ... the "failure" to discover such evidence was not due to a want of

---

1. Robert's brother testified that their natural father beat them.

diligence on the part of applicant ... and not merely cumulative, corroborative, collateral, or impeaching.... [T]he testimony ... will probably bring about a different result on another trial of this cause.

Based upon these findings, the habeas Judge concluded applicant was entitled to relief and recommended that this Court grant the relief requested by applicant.

## II.

### Due Deference

We are not bound by the "findings, conclusions or recommendations of a trial court in reaching a decision on a postconviction application for writ of habeas corpus." *Ex parte Bates,* 640 S.W.2d 894, 898 (Tex.Cr.App. 1982). However, in habeas hearings, the judge is the fact finder who determines the credibility of the witnesses and we defer to those findings if they are supported by the record. *Ex parte Turner,* 545 S.W.2d 470, 473 (Tex.Cr.App.1977) (If the habeas judge's findings of fact are supported by the record, "they should be accepted by this Court."). *See also, Ex parte Adams,* 768 S.W.2d 281, 288 (Tex.Cr.App.1989). In *Ex parte Moore,* 136 Tex.Crim. 427, 126 S.W.2d 27 (1939), we stated:

... Where the ruling of the trial judge depends upon the existence or non-existence of a certain fact and testimony pro and con is introduced thereon and the evidence is conflicting it becomes the duty of the trial judge to determine the issue, *and unless it appears to this court that his finding was without support in the evidence,* and that he had committed an error in his judgment thereon, *we would not interfere with his findings thereon. Glenn v. State,* 89 Tex.Crim. 13, 229 S.W. 521. [Emphasis added.]

*Id.,* 126 S.W.2d at 28.

The habeas judge in the instant case determined the following: 1) the newly discovered evidence, to-wit: the statements made by Robert from 1990 through the writ hearing, created a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict and that verdict would be differ-

ent in a new trial; 2) that the newly discovered evidence is uncontroverted and that Robert testified falsely at applicant's trial and applicant was convicted primarily upon this false testimony; and, 3) the newly discovered evidence was unknown to applicant at the time of his trial and his failure to discover it was not due to a want of due diligence. These factual determinations are supported by the record and, therefore, should be accepted by this Court, *Turner, supra,* and applicant is entitled to relief.

## III.

### The Burden of Proof

Even if we refused to accept the habeas Judge's findings of fact, applicant is nevertheless entitled to relief. Under *Schlup, supra,* applicant must show "by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence." *Ante,* 947 S.W.2d at 209. Clear and convincing evidence is an intermediate standard of proof which falls between the ordinary civil "preponderance of the evidence" standard and our usual "beyond a reasonable doubt" standard in criminal cases. *State v. Addington,* 588 S.W.2d 569, 570 (Tex. 1979). Clear and convincing evidence is defined "as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Ibid.* It is in this light that we must review all of the evidence to determine if applicant met his burden.

In applicant's original trial the State presented only four witnesses. Robert's teacher testified to finding the sexually explicit note and drawing. A police officer and Robert's stepmother related Robert's outcry statements concerning the alleged sexual assault. And finally, Robert testified he and his brother were ongoing victims of aggravated sexual assault by their mother and applicant.

The newly discovered evidence is the recent testimony of Robert and his brother. Both testified that the alleged aggravated sexual assault *never* occurred and that Robert's trial testimony was perjured and se-

cured through the intimidation of Robert and his brother by their father.

When considering all of this evidence in light of the new evidence, I agree with the majority that no reasonable juror would have convicted applicant.

With these comments, I join the majority opinion.

WHITE, Judge, dissenting.

The majority states they "are convinced by clear and convincing evidence that no rational jury would convict him [applicant] in light of the new evidence." Because I believe the majority incorrectly evaluates applicant's post-conviction claim of innocence, I dissent to their decision to grant relief to applicant.

An applicant's due process right to pursue a freestanding claim of newly discovered evidence of innocence, which meets the threshold standard for a "truly persuasive" demonstration of innocence under the standards set out in *State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389 (Tex.Cr.App.1994), in a non-capital felony case at the post-conviction stage necessarily demands an extraordinarily high showing of innocence. First and most important, the criminal trial is the primary event for determining guilt or innocence. A criminal defendant is given many rights to ensure an innocent person will not be convicted. Many rights and resources have been concentrated at that time to decide guilt or innocence. See *Herrera v. Collins*, 506 U.S. 390, 401–03, 113 S.Ct. 853, 861, 122 L.Ed.2d 203, 217 (1993). A post-conviction habeas applicant has already been accorded the various protections provided by the Constitution which seek to ensure that the innocent will not be convicted. And he has been found guilty beyond a reasonable doubt, in this case, by a jury. Thus, the habeas applicant is a legally guilty person, not an innocent one. See *Herrera*, 506 U.S. at 419–20, 113 S.Ct. at 870, 122 L.Ed.2d at 229 (O'Connor, J., concurring). Second, a state has a strong interest in punishing the guilty and in the finality of its judgments. Therefore, it is only the truly extraordinary case that should merit review on a post-conviction claim of innocence.

Based on these considerations, an applicant seeking relief based on a claim of innocence should have to "demonstrate that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict and that it is probable that the verdict would be different." *State ex rel. Holmes*, 885 S.W.2d at 398. If this showing is made, the habeas court must give the applicant a forum and an opportunity to present evidence. *Ibid.* Because the district court held a hearing on applicant's claim of innocence, it needs only to be determined what burden of proof applicant must satisfy to obtain habeas relief.

In the instant case, the majority revisits the discussion of *Herrera* that took place in *Holmes*. In doing so, the majority chooses to resuscitate the burden of proof proposed by Justice Blackmun in his dissent in *Herrera*, which was rejected by a majority of the members of the Court in *Herrera* and by a majority of the members of this Court in *Holmes*, and breathe new life into it here. In the instant cause, the majority elevates itself to the position of being the thirteenth juror, overseeing applicant's post-conviction claim of innocence to determine whether the newly discovered evidence convinces them of an applicant's innocence. The majority ignores both the precedent of this Court and the principle of stare decisis to achieve the result they desired.

This Court should adhere to the standard set down in *State ex rel. Holmes*, wherein this Court discussed the need for a very high burden of proof for a claim of factual innocence, relying on *Herrera* that such a claim required " 'a truly persuasive demonstration of actual innocence.' " 885 S.W.2d at 398. In *Holmes*, this Court agreed that a high burden of proof was necessary because an otherwise constitutionally valid conviction should not be easily set aside. This Court concluded that an individual "must show that based on the newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof of guilt beyond a reasonable doubt" for the individual to obtain relief. *Id.* at 399. It is only the rare case which should be able to meet this high burden so as to accord proper

respect to our system of justice through which a habeas applicant has already traveled and been granted numerous rights designed to protect the innocent from conviction. We should apply the same burden of proof to non-capital cases as we established for capital cases because the considerations underlying confidence in the criminal trial and the respect due to finality of judgments must also apply in the non-capital setting. Therefore, to obtain post-conviction relief in a non-capital felony an individual should be required to show that based on the newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof beyond a reasonable doubt. This should have been the standard set for applicant to meet in the instant case. Instead, the majority opts for a lower standard.

The majority then reviews the facts of the instant case in order to determine whether there is "clear and convincing evidence" in the record to "unquestionably establish" for them that applicant is innocent.[1] In doing so, the majority overlooks evidence that was presented at trial. In its opinion, the majority states there was a "complete lack of any other inculpatory evidence in the case, direct or circumstantial." The majority states, without citation of authority, that "we think" another jury hearing applicant's new evidence would acquit applicant. Essentially, the majority thinks applicant is innocent, and has chosen to substitute that wholly subjective judgment for the judgment of the jury who convicted applicant. Instead of precedent, authority, and stare decisis, the majority gives us an unsupported judgment call that they think applicant is innocent.

There are two problems with the method by which the majority reaches this judgment. First, the majority's errs in concluding there was no other inculpatory evidence at trial.

---

1. The majority relies extensively on *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), in setting down the threshold standard to review applicant's claim of newly discovered evidence of his innocence. However, *Schlup* is distinguishable from the instant cause. In the instant cause, applicant contends that he is innocent because the key witness against him at trial, his son Robert, recanted his trial testimony at the writ hearing. Applicant's other son Richard also testified at the writ hearing to deny the offenses occurred. Applicant does not claim any constitutional violation aside from his due process rights which have been infringed upon because he has been incarcerated and deprived of his liberty for a crime which he claims that he did not commit. This is a claim of "bare innocence." Michael J. Muskat, Substantive Justice and State Interests in the Aftermath of Herrera v. Collins: Finding an Adequate Process for the Resolution of Bare Innocence Claims Through State Postconviction Remedies, 75 TEX.L.REV. 131, at 133 (1996).

*Schlup*, on the other hand, involved a claim of "actual innocence," wherein a showing of innocence is used to bypass a procedural bar preventing consideration of a constitutional claim. Muskat, 75 TEX.L.REV., N.8, at 133. In *Schlup*, his "claim of innocence, ..., is procedural, rather than substantive. His constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel, ..., and the withholding of evidence by the prosecution, ..., denied him the full panoply of protections offered to criminal defendants by the Constitution." *Schlup*, 513 U.S. at 314, 115 S.Ct. at 860, 130 L.Ed.2d at 827. Schlup offered his claim of innocence only to obtain a post-conviction hearing of the merits of his constitutional claims by bringing him within the "narrow class of cases" which implicate a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 313–16, 115 S.Ct. at 860–61, 130 L.Ed 2d at 827–828.

Where an applicant pursuing a claim of "bare innocence" attempts to present newly discovered evidence that he alleges will prove his innocence, but does not attach the evidence to a constitutional violation that occurred at trial, the applicant is seeking "only a review of the new evidence, with the hope that the evidence will warrant post-conviction relief in the form of a vacation of his conviction." Muskat, 75 TEX. L.REV., at 133. This is the position advanced by applicant in the instant cause. The lack of a constitutional violation at trial is what distinguishes applicant's case from the applicant in *Schlup*.

The standards of review for evaluation these two distinct claims of innocence are not the same in the federal system. When a convicted person claims that he or she is "actually innocent," as the applicant did in *Schlup*, the standard closely approximates that used by most states when hearing a motion for new trial based on newly discovered evidence. Muskat, 75 TEX.L.REV., at 177–178. When a convicted person pursues his or her claim of "bare innocence," as applicant did in the instant cause, the standard set by the Court in *Herrera* to hear such claims is higher. Muskat, 75 TEX.L.REV., at 178–179.

The majority's decision to lower the standard set down by this Court in *Holmes* will muddle, if not completely obliterate, the substantive distinction between a claim of "bare innocence" and a claim of "actual innocence."

At trial, the State introduced an inappropriate note and drawing of a sexual nature done by Robert at school. Robert's stepmother testified that Robert told her that the sexual information he relied on to write and draw the note came from applicant and his natural mother. The police officer who spoke with Robert about the sexual abuse which he and his brother suffered at the hands of applicant and their natural mother also testified at trial. Robert's schoolteacher, in addition to his stepmother and the interviewing police officer, also testified at trial. This is definitely more than a complete lack of circumstantial or direct inculpatory evidence.

Second, the majority's decision to depart from the standard set by the Court in *Herrera* and adopted by this Court in *Holmes* for evaluating a claim of innocence casts doubt upon their decision. Under the *Holmes* standard this Court should determine whether based on the newly discovered evidence and the trial evidence, any rational trier of fact could find guilt beyond a reasonable doubt. See and compare *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Cr.App.1991); and *Villalon v. State*, 791 S.W.2d 130 (Tex.Cr. App.1990). This is a legal determination.

Applicant should have been required to show that based on the newly discovered evidence offered at his writ hearing, Robert's recantation of his trial testimony and Richard's testimony at the writ hearing that the offenses did not occur, and based on the entire record before the jury that convicted him, no rational trier of fact could find proof of guilt beyond a reasonable doubt.

Unlike the majority's conclusion, the evidence at trial was sufficient to support applicant's conviction and consisted primarily of Robert's testimony. The newly discovered evidence simply conflicts with that evidence. Since we, as the reviewing court, must presume a hypothetical jury would resolve all conflicts in favor of its verdict, a rational trier of fact could find proof of applicant's guilt beyond a reasonable doubt based on Robert's testimony at trial. That another factfinder, the habeas court or the majority in its position as thirteenth juror, believes testimony from Robert almost eleven years after the date of the trial and thinks applicant could be innocent, does not invalidate the original jury's verdict.

In *Holmes*, this Court adopted a burden of proof based on the sufficiency review of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, like an appellate court reviewing sufficiency of the evidence, this Court should have reviewed the newly discovered evidence and the evidence presented at trial to decide whether based on all of that evidence no rational trier of fact could find proof beyond a reasonable doubt. In *Jackson v. Virginia* the Supreme Court emphasized that appellate review of the sufficiency of the evidence does not mean the appellate court should ask itself whether believes the evidence established guilt beyond a reasonable doubt. Unfortunately, today, the majority chooses to cast aside precedent and stare decisis, so that it may undertake the type of review decried in *Jackson v. Virginia*.

Because a rational trier of fact could choose to believe the testimony presented at trial rather than the testimony presented at the writ hearing, I would have concluded applicant has not met his burden to be entitled to relief on his claim of innocence. Because the majority reaches an opposite conclusion, I dissent.

McCORMICK, P.J., and KELLER, J., join this dissent.

WOMACK, Justice, dissenting on State's Motion for Rehearing.

In this case a bare majority extended *Holmes v. Third District Court of Appeals;* 885 S.W.2d 389 (Tex.Cr.App.1994), to non-capital cases, lowered the burden of proof, and apparently allowed a petitioner to get relief from his sentence if he can get a witness to recant. None of this is required by the precedents cited. These are very bad policies as well.

To begin with, *Holmes* was decided on very shaky ground. In saying that habeas corpus is available for a claim of newly-discovered evidence of innocence in a capital case, *Holmes* purported to follow *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The holdings of that

case were: (1) Federal habeas corpus is not available for a claim of newly discovered evidence of innocence in the absence of a violation of constitutionally-required procedures. To require a new trial simply because a jury might acquit in light of the new evidence would not clearly produce a more reliable result, since the passage of time only diminishes the reliability of criminal adjudications. (2) Texas's 30–day limit to move for new trial on newly discovered evidence does not deny due process. (3) Executive clemency is the traditional "fail safe" remedy for late evidence of innocence. (4) *Even if it were assumed for the sake of argument that a truly persuasive demonstration of actual innocence would render an execution unconstitutional* so that federal habeas corpus would lie, Herrera's evidence fell far short of the extraordinarily high threshold showing that would be required. (Herrera's evidence was two witnesses who said that Herrera's brother, now dead, had admitted committing the crime.)

This is mighty thin sand on which to erect the holding of *Holmes* that due process (not the Cruel and Unusual Punishment Clause) would be violated by the execution of an innocent defendant, and that state habeas corpus will lie to permit a defendant to present newly discovered evidence of innocence. And it is no support at all for the holdings in this case that due process is violated by the confinement of an innocent defendant, that post-conviction habeas corpus is available to correct errors of fact, that the defendant must prove his claim by no more than clear and convincing evidence, and that the evidence of a recanting witness might be sufficient.[1]

If rehearing is denied, a convicted defendant in every criminal case (if it a due process problem, there is no reason to limit it to felonies or to sentences of confinement), will now be allowed and encouraged to pursue the witnesses and get them to recant. If he does so, he can relitigate his case forever. And all this is supposed to be based on *Herrera*, where the Court said that habeas corpus was not available because, " 'Due process does

not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.' *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). To conclude otherwise would all but paralyze our system for enforcement of the criminal law."

I vote to grant rehearing to reconsider the revolutionary and unwarranted procedure that this case has created.

McCORMICK, P.J., and KELLER and HOLLAND, JJ., join this dissent.

---

1. What could be weaker than the evidence of a recanting witness, whose testimony is always,

"The last time I was on the witness stand I didn't tell the truth"?