**Ex parte Billy Lynn STEVENS.**

**No. 35059–01.**

Court of Criminal Appeals of Texas.

Oct. 22, 1997.

Richard C. Mabry, Abilene, for appellant.

Kollin Shadle, Asst. Dist. Atty., Abilene, Matthew Paul, State's Atty., Austin, for the State.

OVERSTREET, Judge, dissenting.

Applicant seeks habeas corpus relief on his conviction for aggravated sexual assault. He raises a claim of actual innocence based upon the recantation of the child victim who testified against him at trial. Testifying before the habeas court judge, who was also the judge at the trial, the child now insists that applicant did not commit the offense. The habeas judge, after hearing the testimony, recommends that relief be granted. The majority, for reasons unknown, denies this writ application without a written order. To that action I dissent.

We oftentimes say that in writ application situations the habeas judge is in the best position to determine facts, because the judge is observing the witnesses and actually hearing the testimony. That is why habeas judges issue findings of fact—because they are in the best position to make those factual determinations. In fact, this Court oftentimes remands writ applications to the habeas judge with specific instructions to make fact findings and determinations, to help us make a fair and accurately informed decision ourselves.

This Court, in an opinion authored by Presiding Judge McCormick, has recently even explicitly stated, "If the issue involves the credibility of a witness, thereby making the evaluation of that witness' demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Cr. App.1997). *Guzman* added, that as a general rule this Court "should afford almost total deference to a trial court's determination of the historical facts that the record supports[,] especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id.*, 955 S.W.2d at 88, slip op. at 9. Yet in this case, which is a classic example of a credibility and demeanor evaluation, the majority, without explanation, chooses not to accept the habeas trial judge's fact findings.

In this case the record clearly supports the habeas trial judge's fact findings and recommendation that relief be granted. The majority should tell the bench and bar precisely why it refuses to give deference to and rejects those findings and that recommendation in this case. As a former trial judge myself, I know full well that the person sitting in the courtroom is in the best position to determine witness credibility. And pursuant to our own holdings, that determination, when supported by the record, should be respected by this Court.

Because the majority, without explanation, refuses to honor its very own recent prece-

dent on this issue, I respectfully dissent to such dishonor.

BAIRD and MEYERS, JJ., join.

MEYERS, Judge, dissenting.

Applicant raises a claim of actual innocence based upon the recantation of the victim who testified against him at trial. The facts in this case are similar to, if not more compelling than, the facts presented in *Ex parte Elizondo*, 947 S.W.2d 202 (Tex.Crim. App.1997), where this Court modified the test applicable to claims of actual innocence raised on habeas corpus and granted relief to that applicant. The Court denies relief in this case, but doesn't tell applicant, or the bench and bar for that matter, how it is that *Elizondo* is distinguishable. While not all cases involving a recantation of a witness will call for new trials under *Elizondo*, it would be useful to know why one case merits relief while another substantially similar case does not.

In *Elizondo*, we reiterated the heavy burden placed on a petitioner who makes a collateral attack on his conviction based on a claim of actual innocence. Such petitioner must "demonstrate that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict and that it is probable that the verdict would be different [on retrial]." *Id.* at 206 (quoting *State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389, 398 (Tex.Crim.App.1994)). The task of this Court in exercising our postconviction habeas jurisdiction under article 11.07 or 11.071 is to decide whether the newly discovered evidence would have convinced the jury of the petitioner's innocence. The level of confidence required in this context is "exceedingly high": "the habeas court must be convinced that the 'new facts unquestionably establish [the applicant's] innocence.'" *Id.* at 209. This means that "the petitioner must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence." *Id.*

In *Elizondo*, this Court was convinced that new facts unquestionably established the applicant's innocence. The applicant there was convicted of sexually assaulting his two stepsons based largely on the testimony of the older of the two boys, Robert. The boys were eight and ten at the time of the alleged events. Thirteen years later the brothers claimed that Robert's trial testimony was false, asserting that their natural father threatened and manipulated them until they made the allegations against appellant and their natural mother. The habeas court found that the recanted testimony was more credible than the trial testimony. The record supported that finding. This Court concluded that the applicant had shown by clear and convincing evidence that no rational jury would convict him in light of the new evidence. The applicant was granted relief.

In the instant case, applicant was convicted of sexually assaulting his four year old son, Brandon, in 1989, based on the testimony of Brandon and little else. About five years ago, Brandon began recanting his trial testimony, claiming he had not been assaulted by applicant but was actually sexually assaulted by his then-step father, Kenny Taylor, who threatened to kill Brandon and his mother if Brandon did not testify against applicant. After Brandon submitted an affidavit recanting his trial testimony and his mother, Donna Mayhugh, submitted an affidavit supporting Brandon's recantation, the district attorney's office obtained a statement from Brandon stating that his recantation was not true and reaffirming that he had been assaulted by applicant. Brandon and Mayhugh say Brandon was pressured during a three hour interview into giving that statement, which was false. The habeas judge on applicant's petition, the same judge who presided over the trial in this case, held a hearing at which Brandon, Mayhugh, applicant's mother, a district attorney's investigator, and applicant testified.

Mayhugh testified at the hearing that Taylor was extremely violent and was abusive to both her and Brandon. She testified that Taylor hated applicant. She testified that she had not believed Brandon when he told her that applicant had abused him, but that Child Protective Services told her she would lose custody of Brandon if she did not believe him and testify that way. Mayhugh further

testified that two and a half to three years after she had separated from Taylor, Brandon told her that it was not applicant but Taylor who had abused him: "After he realized Kenny [Taylor] wasn't in the picture any more and he didn't have to be scared any more, he told me what happened." She has since been trying to "undo" applicant's conviction and "tell everyone the wrong person is in prison." Mayhugh stated that Taylor has been convicted of abusing Brandon's younger step-brother. After Mayhugh and Brandon executed affidavits attesting to applicant's innocence, Brandon was interviewed by the prosecuting attorney and his investigator for three hours. Mayhugh stated that she was not permitted to be in the room with them during the interview. When Brandon came out of the interview he was "pretty shook up" and "confused," was upset and had been crying.

Brandon testified at the hearing that he "was beaten and threatened by Kenny Dale Taylor to say that my dad molested me." Brandon testified that he is still afraid of Taylor, and waited for a couple of years to tell his mother the truth because he was afraid that Taylor would come after him. According to Brandon, after molesting him, Taylor "grabbed me and he hit me around and threw me around, and when he got through beating me and everything he told me if I ever told anyone that Kenny did this, then he would kill my mom and my family." Brandon testified to details of the sexual assaults by Taylor. Brandon testified that the during the interview at the district attorney's office, "they kept on telling me that—that my dad did do this and I kept on saying that he didn't, and finally I just got so confused that I started crying and said that he did."

The district attorney's investigator testified that in his recollection the interview with Brandon lasted about 45 minutes. He remembers Brandon explaining that he gave the affidavit recanting his trial testimony because he wanted to get his dad out of prison, and at that point Brandon broke down and cried.

About three years after his interview with the district attorney's office, Brandon gave another statement under oath, again averring that he had lied at trial under threats from his step-father. Brandon stated that he was frightened and crying when he gave his statement to the assistant district attorney. He reiterated that he had been sexually abused by Taylor, not applicant.

Brandon and Mayhugh both testified that Brandon attended counseling sessions with a number of mental health professionals over the years. One of the counselor's who met with Brandon at least ten to fifteen times when he was ten and met with him again at his current age of thirteen, submitted an affidavit stating that in her professional opinion, with forty-five years experience in the field, Brandon's recantation carried greater weight than his trial testimony.

The habeas judge entered detailed findings regarding the above evidence. The judge, who had also presided at applicant's trial, expressly concluded that Brandon was a credible witness at the hearing on the writ application. The judge stated that he did not believe Brandon had been influenced to recant by anyone in authority over him. The judge also noted that "while the motives of the child to testify falsely are in dispute, the present testimony of the child that his trial testimony was false is undisputed." The judge found "by clear and convincing evidence that the testimony of the child at the trial was false, and that it was primarily on that false testimony that Applicant was convicted." The judge concluded that applicant is entitled to relief.

There are striking similarities between the facts in the instant case and the facts in *Elizondo*. Both applicants were convicted of sexually assaulting a child based almost entirely on the testimony of the child victim. In *Elizondo*, the victims were the applicant's step-children. In this case, the victim is applicant's son. The victims in both cases claim their allegations were made out of fear for or manipulation by another parent figure (in *Elizondo*, it was the boys' natural father; in the instant case, it is the Brandon's step-father). There is more evidence in the instant case relating to manipulation and abuse by the victim's step-father than there was evidence of such manipulation in *Elizondo*.

There is also evidence in this case, although not described in the above recitation, of considerable animosity between Taylor and applicant.

There are differences between this case and *Elizondo*. The victims vary in age. In *Elizondo*, the victims were eight and ten at the time of the alleged events and began recanting about six years later. Here, Brandon was four at the time of the offense, he was five at trial, about eight when he began recanting and gave his first affidavit, nine when he gave his statement to the district attorney's office and is currently thirteen. One troubling fact present in the instant case is that Brandon withdrew his recantation during an interview with the prosecuting attorney. Unfortunately a majority of the Court does not provide any insight as to whether this is the fact that sets this case apart from *Elizondo*. In my view, the differences between the two cases are not such that the burden is not met in this case, as distinguished from *Elizondo*. The record supports the habeas court's finding that applicant is entitled to relief. *Elizondo* is not distinguishable on its facts. Applicant is entitled to relief based on the precedent established by *Elizondo*.

Precedent apparently carries little weight these days. At the very least, the Court should take a stab at distinguishing for the benefit of the bench and bar, and applicant, this case from *Elizondo*. But its distinguishing features do not seem to form the basis of the Court's denial of relief in this case. Rather, I fear today's action appears to stem entirely from a refusal by individual members of the Court to be bound by precedent.

With these comments, I dissent.

BAIRD and OVERSTREET, JJ., join.