**Ex parte Carlos CARMONA.**

Nos. AP–75182-AP–75184.

Court of Criminal Appeals of Texas.

March 1, 2006.

Jason Mills, Fort Worth, for Appellant.

Katherine A. Drew, Asst. District Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., announced the judgment of the Court and delivered an opinion, in which JOHNSON, HOLCOMB, and COCHRAN, JJ., joined.

The applicant seeks relief through habeas corpus from an adjudication of guilt that resulted in the revocation of deferred adjudication and a ten-year sentence of imprisonment in the Texas Department of Criminal Justice–Correctional Institutions Division. The applicant was adjudicated guilty based entirely upon perjured testimony. We grant the applicant relief because his community supervision was revoked without due process of law.

### I.  Factual and Procedural Background

The applicant was placed on deferred adjudication for ten years and fined $2000 for his guilty plea to sexually assaulting Amanda Leal, retaliating against Leal, and unlawful possession of a firearm by a felon. Days after the applicant was placed on deferred adjudication community supervision for these three crimes, the State filed a motion to adjudicate guilt in each case based upon Leal's claim of a subsequent assault.

At the adjudication hearing, the State presented three witnesses. Leal testified that the applicant struck her in the face in a grocery store parking lot. Leal also stated that she had had no medical work done on her face and that she did not check into a hotel with the applicant on the same night as the alleged assault took

place. Lawrence Battles testified that he witnessed the assault on Leal by the applicant and that he had never met Leal prior to the assault taking place. Finally, Linda Chacon, Leal's cousin, stated that she saw Leal at the grocery store and witnessed her bloody appearance on the day of the assault.

As a result of the testimony of these three witnesses, the trial court adjudicated guilt on the original offenses and sentenced the applicant to ten years' incarceration. The applicant filed a motion for new trial alleging that the revocation was based solely on perjured testimony. The trial court denied the motion because it did not include verified affidavits. On direct appeal, the applicant's claim of ineffective assistance of counsel was overruled.[1]

The applicant filed an application for writ of habeas corpus in each case, claiming that the alleged assault used to support the adjudication of guilt never took place. During the hearing on the applications, Leal admitted that she had perjured herself in retaliation for the abuse she had suffered in the past and because the applicant did not call her when he was released from jail. She testified that she had fabricated her report to the police and that she had lied during the adjudication hearing. Leal also stated that she had checked into a hotel with the applicant on the day of the claimed assault. Leal then testified that she had convinced her cousin, Linda Chacon, to falsely testify that she saw Leal at the grocery store where the alleged assault took place.

Further negating the evidence offered by the State to adjudicate the applicant's guilt, Leal admitted that, through her work as an exotic dancer, she had known Battles, the State's witness who claimed to have seen the assault, well before the alleged assault took place. Battles supplied affidavits admitting that he had fabricated his testimony at Leal's request, although he later invoked his constitutional right against self-incrimination and refused to testify. Finally, medical records revealed that the bruises and bandages on Leal's face were actually the result of rhinoplasty, not an assault perpetrated by the applicant.

The trial court entered findings of fact in all three cases, listing the specific inconsistencies between Leal's testimony at the adjudication hearing and the affidavits and testimony given in the habeas proceedings. It specifically found that Leal had committed perjury.[2] The trial court recommended granting relief if this Court concludes that the applicant's claim is cognizable.

We ordered the parties to brief the limited question of whether a claim that adjudication of guilt was entered based entirely on perjured testimony is cognizable. We hold that, under the limited circumstances of this case, the applicant's claim is cognizable and that he is entitled to relief.

## II. Law and Analysis

### A. Cognizability

Habeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void, or for denials of fundamental or constitutional rights.[3] If

**1.** *Carmona v. State*, No. 05–02–00145–CR, 05–02–00146–CR, 05–02–00147, 2003 WL 22480917, 2003 Tex.App. LEXIS 9351 (Tex. App.-Dallas Nov.4, 2003, no pet.) (not designated for publication). The applicant alleged that counsel was ineffective for filing an inadequate motion for new trial.

**2.** Leal was later prosecuted for aggravated perjury.

**3.** *Ex parte Sanchez*, 918 S.W.2d 526, 527 (Tex. Crim.App.1996).

the applicant's claim fits within one of these categories, then his claim is cognizable in post-conviction habeas proceedings.

■ The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation.[4] Probationers have an obvious interest in retaining their conditional liberty. The State also has an interest in ensuring that revocation proceedings are based on accurate findings of fact and the informed exercise of discretion, which avoid the unnecessary interruption of a successful effort at rehabilitation and provide for the safety of the community.[5] In *Morrissey v. Brewer*, the United States Supreme Court held that due process applies to parole revocations.[6] Commenting on the condition of one on parole, the Court noted:

> Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

In many cases, the parolee faces lengthy incarceration if his parole is revoked.[7] In *Gagnon v. Scarpelli*, the Supreme Court held that the procedures outlined in *Morrissey* for parole revocation should also apply to probation proceedings.[8]

■ To meet the requirements of due process, the final revocation of probation must be preceded by a hearing, where the probationer is entitled to written notice of the claimed violations of his probation, disclosure of the evidence against him, an opportunity to be heard in person and to present witnesses and documentary evidence, a neutral hearing body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation.[9] As we said in *Ex parte Hale*, "the Constitution of our country has been interpreted to protect persons who are released [on community supervision], from reincarceration without due process of law." [10]

■ Accordingly, due process requires that reincarceration occur only after the disclosure of evidence against the defendant.[11] Within this right to disclosure of evidence afforded by due process, we can infer the requirement that revocation may not occur when it is based solely on perjured testimony. Because habeas review is appropriate for denials of

4. *Bearden v. Georgia,* 461 U.S. 660, 666 & n. 7, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

5. *Gagnon v. Scarpelli,* 411 U.S. 778, 785, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

6. 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

7. *Ibid.* (citations omitted). *See also United States ex rel. Bey v. Connecticut State Board of Parole,* 443 F.2d 1079, 1086 (2d Cir.1971) ("It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom."); *Murray v. Page,* 429 F.2d 1359 (10th Cir.1970)

(parole revoked after eight years; 15 years remaining on original term).

8. *Gagnon,* 411 U.S. at 782, 93 S.Ct. 1756.

9. *Id.* at 786, 93 S.Ct. 1756.

10. 117 S.W.3d 866, 871 (Tex.Crim.App.2003) (*citing Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation)).

11. *Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756.

fundamental or constitutional rights,[12] the applicant's claim that his community supervision was revoked solely on perjured evidence, and therefore without due process of law, is cognizable under the habeas jurisdiction of this court.

The State argues, however, that the applicant's claim may not be cognizable because Code of Criminal Procedure Article 42.12, section (5)(b) states that no appeal may be taken from the trial court's determination to adjudicate guilt. This prohibition of an appeal from a decision to adjudicate guilt does not, however, prohibit a collateral attack on the determination to adjudicate guilt through habeas corpus because appellate proceedings are different from collateral, post-conviction proceedings.

Code of Criminal Procedure Article 3.01 states that, "All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specifically defined." The Code does not specifically define either appeal or habeas corpus. In *Black's Law Dictionary*, appeal is defined as "[a] proceeding undertaken to have a decision reconsidered by bringing it to a higher authority."[13] Habeas corpus, in the context of a challenge to a final felony conviction, is a collateral attack on the judgment.[14] A collateral attack is "[a]n attack on a judgment entered in a different proceeding."[15] Appeals and habeas corpus are two different types of proceedings. If the legislature meant to foreclose habeas relief from adjudication proceedings, it could have said so explicitly, but it did not. We conclude that the prohibition on direct appeals in Article 42.12, section 5(b) is not a bar to habeas relief in the applicant's case.[16]

Having concluded that the applicant's claim is cognizable in habeas proceedings, we will address the merits of his claim.

### B. Violation of Due Process

Leal's and Battles's recantations are evidence that the applicant's community supervision was revoked without due process of law. Further, the trial court has entered findings of fact and conclusions of law and has specifically found that Leal committed perjury. While this Court is not bound by the findings of the trial court in post-conviction habeas corpus proceedings, such findings are considered if supported by the record.[17]

The witnesses against the applicant either have recanted their testimony or their bias and lies have been exposed. Further,

---

**12.** *Ex parte Sanchez*, 918 S.W.2d 526, 527 (Tex.Crim.App.1996).

**13.** BLACK's LAW DICTIONARY 74 (Abridged 7th ed.2000).

**14.** *Id.* at 208.

**15.** *Ibid.*

**16.** This is not the first time that jurists have offered opinions on this point. Judge Overstreet explained in his concurring opinion in *Olowosuko v. State*, in which this Court affirmed that Article 42.12, section 5(b) does not allow an appeal from a trial court's determination to adjudicate guilt, "it would seem that a deferred adjudication probationer's only avenue of recourse to complain of the adjudication is via Chapter Eleven of the Code of Criminal Procedure." 826 S.W.2d 940, 942 (Tex.Crim.App.1992). Further, a court of appeals has commented on the availability of habeas to challenge an adjudication of guilt even though an appeal is statutorily prohibited. In *Kendall v. State*, the Second Court of Appeals noted that a remedy, if any, for error at an adjudication hearing is by way of a post-conviction writ of habeas corpus. 929 S.W.2d 509, 510 (Tex.App.-Fort Worth 1996, pet. ref'd).

**17.** *Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex.Crim.App.1997).

the evidence of physical abuse, consisting of photos of Leal's bruised and bloodied face, has been proven to be the result of a medical procedure rather than an attack by the applicant. The record supports the trial court's findings, and we are convinced that the applicant's community supervision was revoked without due process of law because it was revoked solely on the basis of perjured testimony. Accordingly, the applicant is entitled to relief.

The trial court's judgment revoking the applicant's community supervision is set aside and the Director of the Texas Department of Criminal Justice—Correctional Institutions Division is ordered to return applicant to the custody of Dallas County for further proceedings by the trial court.

WOMACK, J., filed a concurring opinion.

HERVEY, J., filed a dissenting opinion, in which KELLER, P.J. and KEASLER, J., joined.

MEYERS, J., did not participate.

WOMACK, J., filed a concurring opinion.

It seems to me there are three issues.

The first is, shall habeas corpus relief be granted from a judgment revoking community supervision when the judge of the convicting court has found from the testimony of recanting witnesses, and this Court agrees, that the defendant did not violate the conditions of his community supervision? I would hold that, if habeas corpus relief from a judgment of guilt beyond a reasonable doubt will be granted on the basis of recantations, as this court has held,[1] then it must follow that relief from a community-supervision revocation will be granted.

Second, is habeas corpus relief on that basis available in the particular kind of community supervision called "deferred adjudication," despite the statutory provision, "No appeal may be taken from this determination"[2]? For the reasons given in the opinion of the Court, *ante* at 496, I agree that it is.

Finally, is the relief the Court gives in this case proper? I agree that it is.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

I agree that Article 42.12, § 5(b), Tex. Code Crim. Proc., does not suspend collateral attacks on revocation proceedings. Because the prosecution was unaware that all of the evidence it used to revoke applicant's deferred adjudication "probation" was perjured, the requisite state action to establish a due process violation is called into question. *See Sanders v. Sullivan,* 863 F.2d 218, 222 (2nd Cir.1988) (discussing cases holding that due process violation requires "a showing of prosecutorial involvement in the perjury" to constitute the requisite state action necessary to a due process violation). It is, however, not very difficult to decide that a citizen of this State has a state-law right not to be convicted or have his probation revoked based on perjured testimony.[1] And, just as the

1. *See Ex parte Elizondo,* 947 S.W.2d 202 (Tex. Cr.App.1996).

2. *See* Code Crim. Proc. art 42.12, § 5(b).

1. *See, e.g.,* Tex. Pen.Code, § 1.02(4) (an objective of penal code is "to safeguard conduct that is without guilt from condemnation as criminal"); Tex.Code Crim. Proc., Article 1.03(5) (an object of criminal procedure code is to "ensure a fair and impartial trial"); *Jimenez v. State,* 32 S.W.3d 233, 244 (Tex.Cr. App.2000) (McCormick, P.J., concurring) ("due process of law" ensures that a citizen

prosecution has a duty to correct perjured testimony at trial when it comes to its attention thus establishing the requisite state action in that circumstance,[2] the courts of this State should have a similar duty when a conviction based on perjured testimony comes to their attention with their failure to correct it also supplying the requisite state action. In this case, I agree with the Court's opinion to the extent that it decides that an uncorrected revocation of probation based solely on perjured testimony violates due process. *See Sanders,* 863 F.2d at 222–26; *see also Ex parte Carmona,* 185 S.W.3d 492, 496 (Tex.Cr.App. Nos AP–75, 182; 75,183; 75,-184, delivered this date) (deciding that applicant's community supervision was revoked without due process of law "because it was revoked solely on the basis of perjured testimony").

I, therefore, agree with the Court that applicant is entitled to relief. The Court's judgment, however, does not grant the relief to which applicant is entitled. The Court's judgment sets aside the trial court's judgment revoking applicant's probation and remands applicant to the custody of Dallas County for further proceedings. This judgment does not order applicant's immediate release, and it arguably does not set aside applicant's convictions. The Court's judgment, therefore, may be ambiguous on whether the State, which agrees that applicant's probation was revoked based solely on perjured testimony but disagrees that applicant is entitled to relief in this proceeding, may continue to incarcerate applicant on these convictions. I would decide that the

Court's judgment should set aside applicant's convictions, reinstate his deferred adjudication probation, and order his immediate release.

Because the Court's judgment does not expressly provide these remedies, I respectfully dissent.

---

receives whatever the constitution and state law—the "law of the land"—provide).

**2.** *See Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (conviction obtained through perjury, "known to be such by representatives of the State," violates due

process, and the same result obtains when the State, although not soliciting perjury, allows it to go uncorrected when it appears); *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Cr.App. 1983), *cert. denied,* 454 U.S. 919, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981).