In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-077 CR


____________________



EX PARTE JAWAID AHMED PARKER






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 04-07-05731 CR






MEMORANDUM OPINION


 The opinion of June 14, 2006, is withdrawn, and the following is substituted in its
place. 

 Jawaid Ahmed Parker appeals the trial court's order denying him relief on his
application for writ of habeas corpus under Tex. Code Crim. Proc. Ann. art. 11.072
(Vernon 2005). Pursuant to a plea bargain, Parker pled guilty to the offense of tampering
with a governmental record. See Tex. Pen. Code Ann. § 37.10 (Vernon Supp. 2005). The
indictment charged him with making a false entry on a marriage license by representing that
S.P., whom he married, was not a son or daughter of a brother of the whole blood or half
blood. S.P. was Parker's niece, and she was indicted along with Parker. The State dropped
the charge against S.P.

 Pursuant to the plea bargain, the trial court assessed a $750 fine against Parker,
sentenced him to two years in a state jail facility, suspended imposition of the jail sentence,
and probated the sentence for two years. Parker did not appeal his conviction. Later, he filed
an application for writ of habeas corpus with the trial court. The trial judge denied Parker
habeas relief, entered findings of fact and conclusions of law, and certified Parker's right to
appeal. On appeal, Parker argues his due process rights were violated; the government's
conduct was outrageous; his counsel was ineffective; no evidence was submitted by which
he could have been found guilty; and his sentence is void. We overrule Parker's issues and
affirm the trial court's denial of habeas relief.

 Cognizable state habeas applications are limited to claims of a jurisdictional defect
rendering the judgment void or for denials of fundamental or constitutional claims. See Ex
parte Carmona, 185 S.W.3d 492, 494 (Tex. Crim. App. 2006) (citing Ex parte Sanchez, 918
S.W.2d 526, 527 (Tex. Crim. App. 1996)). Parker has the burden to show he is entitled to
habeas corpus relief and he must prove his allegations by a preponderance of the evidence. 
See Ex parte Cummins, 169 S.W.3d 752, 757 (Tex. App.--Fort Worth 2005, no pet.) (citing
Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995)). 

 In reviewing the trial court's decision to deny or grant habeas corpus relief, we view
the facts in the light most favorable to the trial court's ruling. Ex parte Peterson, 117 S.W.3d
804, 819 (Tex. Crim. App. 2003). Absent an abuse of discretion, we will uphold the trial
court's decision. Id. We "'afford almost total deference to a trial court's determination of
the historical facts that the record supports especially when the trial court's fact findings are
based on an evaluation of credibility and demeanor.'" Id. (quoting Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997)). When the record contains findings of fact, we defer
to the findings if the record supports them. See Ex parte Thompson, 153 S.W.3d 416, 417-18
(Tex. Crim. App. 2005). 

 The trial court did not conduct an evidentiary hearing; its decision was based on the
evidence submitted by the parties. Parker and the State filed pleadings, affidavits, and other
documentary evidence. Parker filed a sworn habeas application and a sworn "Memorandum
of Facts and Law" with documents attached. Upon reviewing the habeas application, the trial
judge entered an order requiring the prosecutors, Parker's defense counsel, and Special Agent
Marcos Saltarelli to file affidavits responding to specific written questions posed to them by
the trial judge. All complied. 

 Along with his sworn habeas application and Memorandum of Facts and Law, Parker
submitted the following exhibits: two letters from a psychiatrist noting Parker suffers from
"Major Depression"; a physician's letter explaining Parker has "Morbid Depression" and is
on medication; a copy of a letter from S.P. to a Judge Yarbrough in another, unidentified case
in which S.P. describes Parker as a person of "good moral character" and explains her parents
are "abusive and extremely controlling"; Parker's mother's immigrant petition for a relative
(Parker); an alleged statement by Agent Saltarelli in which he explains he arrested defendant
May 28, 2004, and defendant "was driving a brand new Lexus & had over $2,000.00 in cash
in his possession"; Parker's October 25, 2004, letter complaining to his attorney, Omar Izfar,
about inadequate representation; an investigative memorandum concerning an interview with
Bethany Bachman with whom S.P. had stayed for a few days after Parker's May 2004 arrest;
a copy of S.P.'s alleged note asking Parker's "associate" to sell some of Parker's property;
and an advertisement showing pictures of a car and motorcycle like those Parker says he
owned. 

 Parker contends he was denied due process because the asserted lack of
admonishments, coercion by his attorney and the government, a defective indictment, duress,
and mental incompetence rendered his plea involuntary. (1) Article 26.13 requires that the court
admonish a defendant and sets out the content of those admonishments. Tex. Code Crim.
Proc. Ann. art. 26.13 (Vernon Supp. 2005). Article 26.13(d) provides that the "court may
make the admonitions required by this article either orally or in writing." Id. The reporter's
record of the plea hearing is not before us. The clerk's record, however, contains written
admonishments that satisfy the requirements of Tex. Code Crim. Proc. Ann. art. 26.13
(Vernon Supp. 2005). Parker's initials are beside each applicable admonishment in the plea
documents, and the signatures of Parker, defense counsel, the prosecutor, and the trial judge
appear at the document's conclusion. 

 If the court makes the admonishments in writing, it must receive a statement signed
by the defendant and the defendant's attorney that he understands the admonishments and
is aware of the consequences of his plea. Id. at art. 26.13(d). The written admonishments
contain this statement, and the required signatures are present. Further, the judgment recites
that the "Court admonished the Defendant as to the consequences of such plea and the
Defendant persisted in entering his plea of Guilty." We presume the regularity of the
judgment and record. See Jones v. State, 77 S.W.3d 819, 822 (Tex. Crim. App. 2002) (citing
Breazeale v. State, 683 S.W.2d 446, 450 (Tex. Crim. App. 1985) (op. on reh'g)). Parker has
not established the trial court misinformed or failed to inform him about the consequences
of his plea. Where the record shows that the defendant was properly admonished, it is a
prima facie showing that the plea was knowing and voluntary. See Mallett v. State, 65
S.W.3d 59, 64 (Tex. Crim. App. 2001) (citing Ex parte Williams, 704 S.W.2d 773, 775 (Tex.
Crim. App. 1986)). 

 Parker also asserts his plea was involuntary because the trial court and his attorney
failed to inform him that if he agreed to a plea bargain for regular community supervision in
this case, he could not receive probation in a pending Harris County case. Article 26.13 does
not require the trial judge to warn Parker about the consequences his plea would have on a
case pending elsewhere. See Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2005). 
The plea papers signed by Parker contain the required admonishments. The trial judge is not
required to give any others. See id; see Jackson v. State, 139 S.W.3d 7, 17 (Tex. App.--Fort
Worth 2004, pet. ref'd) (Court will not impose a duty on a trial court to admonish a defendant
about the consequences that a guilty plea would have on possible later proceedings when the
trial court has no knowledge of the nature of the charges, or any other pertinent
circumstances surrounding the other charges.). 

 Parker also argues his trial counsel was ineffective for failing to inform him of this
consequence. To prevail on an ineffective assistance claim, appellant must prove by a
preponderance of the evidence that (1) counsel's performance fell below the standard of
prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's
deficiency, the result of the trial would have been different. See Strickland v. Washington,
466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999). Ineffective assistance allegations must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. Thompson, 9 S.W.3d at 813. Our review of trial counsel's performance
must be highly deferential to "avoid the deleterious effects of hindsight." Id. 

 Parker argues that if counsel had informed him of the correct probation law, he
"would have opted to go to trial, knowing full well that even if he lost the trial, [the] jury
would have granted him Deferred Probation, given he had no prior criminal history[.]" 
Parker assumes a jury in the "tampering" case could have given him deferred probation. 
However, only the trial judge can give deferred adjudication. See Tex. Code Crim. Proc.
Ann. art. 42.12, § 5(a) (Vernon Supp. 2005). Parker also points out that trial counsel did not
answer the trial court's question asking what advice the attorney gave Parker concerning the
effect his plea would have on the Harris County case. 

 Trial counsel filed an affidavit stating he was not the attorney in the other case and he
made no promises or assurances about what would happen in Harris County. Trial counsel
stated he advised Parker that the Harris County case was a completely separate charge that
would be handled when the Montgomery County charge was resolved. Parker says he
rejected a plea offer of two years in the Harris County case and "went to trial totally
believing that he would get probation and ended up with 15 years prison sentence due to his
counsels' misrepresentations." We have no information in the record about other counsel's
representation in the Harris County case. The record does not indicate whether the Harris
County case was a jury trial or bench trial.

 The Court of Criminal Appeals has stated, "[I]f the consequence is definite and largely
or completely automatic, then it is a direct consequence. . . . [A] direct consequence is one
that is 'a definite, practical consequence of a defendant's plea.'" Mitschke v. State, 129
S.W.3d 130, 135 (Tex. Crim. App. 2004) (quoting Ex parte Morrow, 952 S.W.2d 530, 536
(Tex. Crim. App. 1997)). Even without a state jail felony conviction in the instant case, there
is nothing in the record before us to indicate that probation in the Harris County case was
definite and largely or completely automatic. See Mitschke, 129 S.W.3d at 135; but see
Jackson v. State, 139 S.W.3d 7, 19 (Tex. App.--Fort Worth 2004, pet. ref'd) (Applying
Mitschke, appellate court held counsel was ineffective in failing to inform defendant of the
effect of a guilty plea and conviction in a non-capital felony case on a pending capital case.). 
On this record, any issues concerning probation consequences are attenuated and collateral. 
See Ex parte Morrow, 952 S.W.2d at 536 (Counsel was under no duty to inform Morrow of
various ways his three guilty pleas could be used against him at a possible capital murder
retrial, because the use is collateral, and not a definite, practical consequence of his guilty
pleas.). 

 Parker contends his trial counsel was ineffective in other ways: failing to prepare for
the case, question any witnesses, perform a background check on Parker's psychiatric
history, explain the charge, and investigate selective prosecution. As to trial counsel's
preparation, we have only parts of the record from the original guilty plea before us; with that
information and the affidavits from counsel and the prosecutors, we are able to determine
counsel did perform work on the case. In his affidavit, trial counsel stated he obtained a copy
of the relevant document. He explained that, except for an unknown clerk, there were no
witnesses; he did not interview S.P. Trial counsel stated he researched possible defenses and
found none applied. He stated he informed Parker the case "was a pretty straightforward
charge and that there [was] not a lot of room for dispute." Counsel indicated he explained
the charge to Parker and Parker appeared to understand it. From the affidavit of the assistant
district attorney, Brenda Martin, we know she and trial counsel negotiated a plea bargain. 
As to Parker's claim of his own lack of competency in entering into the plea agreement and
pleading guilty, counsel indicated Parker never told him he (Parker) was suffering from any
form of mental illness, and counsel believed Parker was mentally competent to understand
and accept the plea. The doctors' letters do not establish any mental competency issues
regarding Parker's November 2004 guilty plea. Parker signed the admonishments and
acknowledged he understood them. Parker's letter to his attorney complains of the attorney's
lack of communication with Parker, lack of aggressive action on Parker's case, and failure
to retrieve Parker's property. The letter does not state specifics showing counsel's
performance was deficient. The record does not demonstrate counsel's performance fell
below prevailing professional norms.

 Parker also contends that his attorney and Marcos Saltarelli, the Special Agent with
the U.S. Immigration Customs Enforcement Agency, coerced him to plead guilty in the
tampering case and that the prosecution was malicious and vindictive. Parker maintains he
suffered abuse and mental anguish in jail (2) and was under such duress from the "government's
outrageous actions" that he was mentally incompetent and pled guilty. Parker contends
Agent Saltarelli made Parker's life in jail miserable: Parker says he was called a "Pakistani
baby raper"; he was placed in a racially segregated cell where he was segregated because of
his nationality; inmates harassed and beat him; he was denied his depression medicine; and
he was under such duress that he began to stutter. Parker also says Agent Saltarelli was
doing personal favors for S.P.; S.P. filed sexual assault charges against him because Saltarelli
demanded she do so; Saltarelli assisted S.P., and she "was allowed to take all [Parker's]
property and cash[,]" including his $70,000 car; and that she perjured herself on the stand in
another case. Parker also says Saltarelli influenced prosecutors to dismiss the "tampering"
charges against S.P. because she was a United States citizen; the agent was able to have
S.P.'s name removed from the apartment lease; "they" cut Parker off from his money supply
so that he would not be able to obtain an attorney; and the government influenced Parker's
attorneys. Parker concludes Saltarelli's motivation was jealousy because Parker was a
"student from Pakistan in imported designer jeans, Armani watch and a $70,000 car and
immediately implied that I must be doing something illegal." Parker argues this alleged
conduct violated his due process rights and caused him to plead guilty. 

 Agent Saltarelli denied the conduct occurred. In his affidavit, he denied using any
ethnic or racial slurs to refer to Parker, denied having any influence over Parker's jail
conditions, and denied any involvement in any violence against Parker. Saltarelli further
stated he did not conspire with Parker's attorneys in any criminal or civil immigration matter. 
Saltarelli did not deny he assisted S.P. in obtaining Parker's vehicle and other property. We conclude the matters involving issues of property and alleged perjury are
collateral to any guilty plea by Parker in the "tampering" case and do not support the
involuntary plea claim. Furthermore, other than the bare allegations in his habeas petition
and "Memorandum of Facts and Law," Parker submitted no evidence of his claims
concerning jail conditions, S.P.'s alleged perjury in another case, or the filing of sexual
assault charges against Parker. As set out in the Findings of Fact and Conclusions of Law,
the trial court found Saltarelli's affidavit credible and concluded Parker failed to prove these
allegations of "outrageous" government conduct by a preponderance of the evidence. 

 Parker contends the indictment was defective because S.P., also charged in the
indictment for the same offense, was not prosecuted. He claims the trial court had no
jurisdiction over him because the indictment was never properly transferred from the 410th
to the 221st District Court. He also contends trial counsel was ineffective in failing to object
to these alleged deficiencies. 

 A defendant must raise an allegation of a defect in the indictment before the date on
which the trial on the merits commences, or the alleged defect is waived. Ramirez v. State,
105 S.W.3d 628, 630 (Tex. Crim. App. 2003); Tex. Code Crim. Proc. Ann. art. 1.14
(b)(Vernon 2005). The record does not show whether Parker raised any alleged defect prior
to trial. The indictment does not appear defective. As to the jurisdictional issue, although
a specific court may impanel a grand jury, a returned case need not be assigned there for trial.
Bourque v. State, 156 S.W.3d 675, 678 (Tex. App.--Dallas 2005, pet. ref'd). Here, the
indictment shows the grand jury was impaneled in the 410th Judicial District. All further
documents in the record are styled "in the 221st Judicial District." Nothing in the record
shows the case was originally filed in the 410th Judicial District Court. When one court
impanels the grand jury that returns an indictment in the case, but the case is filed in another
court, no transfer order is required. Id. We find the trial court had jurisdiction over Parker. 
 Parker asserts the government selectively prosecuted him because of his race, religion,
or nationality. The affidavit of Michael Griffin, assistant district attorney, states as follows:

 In my opinion, the evidence that was presented to this office by Special Agent
Marcos Saltarelli was sufficient to prove [Parker] had committed the offense
of tampering with a government record. The case was accepted and presented
to the Grand Jury based on that evidence, and not due to any pressure from any
federal entity. 

Griffin further explains he "exercised [his] discretion in dismissing the charges against
[S.P.]" because he believed she was "merely [Parker's] pawn rather than a legitimate co-conspirator. [S.P.] was only 18 years old when [Parker], her 33-year-old uncle, married her
under the false pretenses which served as the basis for this prosecution." Brenda Martin, the
assistant district attorney who negotiated the plea bargain agreement on behalf of the State,
stated by affidavit that federal authorities did not pressure the State to pursue the prosecution,
and she moved forward with the case based on evidence that appeared sufficient to prove the
offense. The trial judge was free to believe the prosecutors' sworn statements regarding the
basis for the prosecution. 

 Parker contends the government interfered with his attorneys, violated his due process
rights, and, through Agent Saltarelli, conspired to convict and deport him. As an example
of this alleged conspiracy, he points to trial counsel's failure to obtain deferred adjudication
rather than regular probation. Brenda Martin's affidavit states, "The State offered [Parker]
two years in State Jail, probated for two years. . . . Those terms are reflected in my written
plea offer to [Parker's] trial counsel . . . , a copy of which is attached hereto. . . . At no time
did I represent to [Parker] or to his attorney that the State would accept a plea of deferred
adjudication." Martin stated she "never asked trial counsel . . . to make any special effort to
secure [Parker's] guilty plea, nor did counsel indicate that he intended to entice or coerce
[Parker] into pleading guilty. To the contrary, [trial counsel] tried to persuade [her] to drop
the charge against [Parker], and [she] found [counsel] to be somewhat inimical during
interactions with him." Further, Saltarelli denied conspiring with Parker's attorneys on any
matter, including pleas. Parker has not established by a preponderance of the evidence that
his attorney conspired with or was pressured by the state or federal government in obtaining
Parker's guilty plea. Martin's affidavit states that the government's handling of the case was
not the result of pressure from federal authorities. 

 Parker contends there was no evidence before the trial court that supported the
judgment. However, the record contains Parker's written stipulation of evidence in which
Parker stipulated and admitted under oath that on or about March 4, 2003, he "did then and
there, with intent to defraud and harm another, namely, Montgomery County and the State
of Texas, knowingly make a false entry on a governmental record, to-wit: an application for
a marriage license, said false entry being that [S.P.] was not a son or daughter of a brother
or sister of the whole blood or half blood or by adoption[.]" Similarly, the admonishments
contain Parker's acknowledgment that he had "read the Indictment and [he] committed each
and every element alleged on the date alleged in the Indictment." The judgment reflects that
"after reviewing the evidence submitted and determining that it was sufficient to show the
guilt of the Defendant," the court found Parker guilty. Parker' s claim that the judgment is
unsupported by evidence is without merit. 

 Parker argues the trial court did not give "due consideration" to his application for
habeas corpus. The record does not support his claim. The trial court submitted written
questions to the prosecutors, Parker's attorney, and Agent Saltarelli, and the court required
them to respond with affidavits. In her Findings of Fact, the trial judge set out Parker's
claims from his habeas petition. Based on the evidence submitted to her, the trial judge made
her Findings and Conclusions. The trial court gave due consideration to the habeas
application. Parker also contends the trial court should have independently determined the
veracity of the affidavits. However, the applicant has the burden to prove the claims in his
habeas application by a preponderance of the evidence. Parker did not establish the
allegations in his habeas application by a preponderance of the evidence, and the trial judge
did not abuse her discretion in denying habeas relief. 

 We overrule Parker's issues and affirm the trial court's denial of relief on the habeas
application.

 AFFIRMED. 

 ___________________________________

 DAVID GAULTNEY

 Justice


Submitted on May 2, 2006

Opinion Delivered July 12, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.

1. In his brief to this Court, Parker references his arguments in the trial court. We
therefore construe his issues before this Court as including those made to the trial court.
2. Apparently, Parker was in "immigration custody" during this time frame.