

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00067-CR

**DANNY WAYNE GRAMMER,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F38861**

# O P I N I O N

Danny Grammer appeals the trial court's revocation of his deferred adjudication community supervision and imposition of a sixty-year prison sentence. We will affirm the trial court's judgment.

## Background

In March of 2005, a grand jury indicted Grammer with three counts of aggravated sexual assault of a child and six counts of indecency with a child. Grammer pled guilty on January 6, 2006 and was placed on ten years' deferred adjudication

community supervision.  As a condition, he was ordered to serve 180 days in jail, which commenced on January 16, 2006.  Grammer was released after serving that time, and he immediately got a job working at the jail upon the sheriff's invitation.

Grammer was ordered to pay $250 in court costs within 120 days of January 6, and beginning on February 6, was ordered to begin paying a $60 monthly supervision fee and a $10 monthly Crimestoppers fee.  At the time of his release from jail in July of 2006, Grammer was in arrears approximately $420 in his fees and $250 in court costs.

While incarcerated, Grammer met and became involved with Kristi Turner, another inmate.  After his release, Grammer obtained permission from Tracey Friedmann, his probation officer, to date Turner, whom Grammer said had been in jail for a "bad checks" charge and had done her "time."  Friedmann did not ask Grammer if Turner was on felony probation, and Grammer testified he did not know the precise details of Turner's "checks" crime; he only knew that she was on "probation."

At the end of July of 2006, Grammer and Turner began living together, and on August 2, during a home visit, Friedmann learned from Turner that she was on probation, and when Turner identified her probation officer, Friedmann knew that she was on felony probation, making Grammer's association with her a violation of his community supervision conditions unless they were married.  The next day, Grammer met with Friedmann and told her that he intended to marry Turner, so Friedmann said she would postpone any action on his violation and gave him until September 30 to

marry Turner because Grammer was in the process of having his divorce finalized.[1]
Friedmann nevertheless promptly reported the violation.

The State filed its motion to proceed with adjudication of guilt on August 24, alleging two violations: (1) failure to avoid association with persons having criminal records and having disreputable or harmful character; and (2) failure to pay the $250 court costs.[2] The trial court—the sitting judge was not the one who had placed Grammer on deferred adjudication community supervision—heard the motion on December 7, 2006, found the State's allegations to be true, and sentenced Grammer to sixty years' imprisonment on three of the counts and twenty years' imprisonment on six of the counts, all to be served concurrently.

### Ineffective Assistance of Counsel

Grammer's first issue complains of ineffective assistance of counsel in failing to subpoena witnesses for the revocation hearing. The State points out that Grammer may not raise issues of ineffective assistance of counsel under the version of section 5(b) of article 42.12 in effect at the time of Grammer's guilty plea and the adjudication proceedings.

We have previously held that a defendant is statutorily prohibited from complaining on appeal of errors occurring at the hearing on the State's motion to proceed to adjudication, including claims of ineffective assistance of counsel at the

---

[1] Turner's probation officer agreed with Friedmann's September 30 deadline. Grammer and Turner eventually married.

[2] Grammer said he paid these costs the very next day (his mother gave him the money to do so); he testified that he thought the 120 days to pay the costs began upon his release from jail because he could not work while in jail.

revocation hearing. *Gray v. State*, 134 S.W.3d 471, 472 (Tex. App.—Waco 2004, pet. denied) (citing *Connolly v. State*, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999)). At the time relevant to this case, section 5(b) provided: "The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. *No appeal may be taken from this determination.*" *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1308, § 5, 2007 Tex. Sess. Law Serv. 4404, 4405 (amending section 5(b) to provide that the trial court's "determination is reviewable in the same manner as a revocation hearing conducted under Section 21" of Article 42.12) (emphasis added) (current version at Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2008)). Therefore, we dismiss Grammer's first issue.[3] *See Connolly*, 936 S.W.2d at 741. For the same reason, we dismiss Grammer's seventh issue, which asserts that the trial court abused its discretion in denying his amended motion for new trial without holding an evidentiary hearing on his allegations of ineffective assistance of counsel.

Grammer's second issue complains of ineffective assistance of counsel in failing to request a separate punishment hearing and to object to the trial court's proceeding to sentencing without a separate punishment hearing. A defendant may raise a claim of ineffective assistance of counsel at the punishment hearing after the trial court has adjudicated guilt because such a claim is "unrelated to" a claim regarding the propriety

---

[3]     "[E]ven if appellant's right to counsel was violated, he may not use direct appeal as the vehicle [] to seek redress." *Phynes v. State*, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992); *see also Tillman v. State*, 919 S.W.2d 836, 838 (Tex. App.—Fort Worth 1996, pet. ref'd) ("Tillman is not without remedy to raise claims of alleged violations of his constitutional rights. . . . In fact, a defendant may properly raise constitutional issues by way of a post-conviction writ of habeas corpus.").

of the conviction. *Kirtley v. State,* 56 S.W.3d 48, 51-52 (Tex. Crim. App. 2001). It necessarily follows that Grammer may complain in this appeal of his counsel's failing to request a separate punishment hearing and to object to the trial court's proceeding to sentencing without a separate punishment hearing; both of those alleged failures would have occurred after the trial court's adjudication of guilt and would be unrelated to the conviction's propriety. We will therefore address Grammer's second issue.

To prevail on an ineffective assistance of counsel claim, a defendant must first show that his counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). It must also be shown that the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v. State,* 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional.[4] *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Mitchell,* 68 S.W.3d at 642.

---

[4]    Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson v. State,* 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *see also Mitchell,* 68 S.W.3d at 642 ("The reasonableness of counsel's choices often involves facts that do not appear in the appellate record. A petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims.").

In the absence of evidence of trial counsel's reason for the challenged conduct, we assume a strategic reason for trial counsel's conduct, if one can be imagined. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it") (quoting 3 W. LAFAVE, ET AL., CRIMINAL PROCEDURE § 11.10(c) (2d ed. 1999) and citing *Thompson v. State,* 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). But, if nothing in the record reveals trial counsel's reason, it is improper for us to speculate on it. *See Thompson,* 9 S.W.3d at 814.

We have a silent record on why Grammer's attorney did not request a separate punishment hearing or object to the trial court's proceeding to sentencing without a separate punishment hearing. Because the appellate record in this case does not evidence the reasons for trial counsel's conduct, and because these alleged deficiencies could have been the subject of trial strategy not revealed by the record, we overrule Grammer's second issue. *See Jones v. State,* 170 S.W.3d 772, 776 (Tex. App.—Waco 2005, pet. ref'd).

## Abuse of Discretion

Issues three and four assert that the trial court abused its discretion in proceeding to adjudication because Friedmann had given Grammer permission to associate with Turner and because Grammer was incarcerated at the same time that he was required to pay the court costs. Once again, citing former section 5(b) and *Connolly,*

the States asserts that Grammer cannot challenge on direct appeal the trial court's decision to proceed to adjudication. This is the law under former section 5(b) relating to direct appeals, apparently no matter how egregious the circumstances:[5] "'the trial court's decision to proceed with an adjudication of guilt is one of absolute discretion and [is] not reviewable.'" *Connolly*, 983 S.W.2d at 740 (quoting *Williams v. State*, 592 S.W.2d 931, 932-33 (Tex. Crim. App. 1979)).[6]

Under the circumstances of Grammer's having obtained permission to associate with and to marry Turner (which he eventually did) and not paying his court costs while incarcerated, we can easily disagree with the trial court's decision to proceed to adjudicate Grammer's guilt and to then assess punishment, but we must nevertheless dismiss issues three and four under the applicable case law.

### Due Process and Cruel and Unusual Punishment

Issue five asserts violations of due process and the Eighth Amendment's provision against cruel and unusual punishment. Because the trial court proceeded to

---

[5]     One commentator suggests raising issues concerning the fairness of the revocation hearing itself through a habeas corpus petition. *See* 4 JOHN M. SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE § 82.02[3][f], at 82-30.2 (2008) (citing *Ex parte Carmona*, 185 S.W.3d 492 (Tex. Crim. App. 2006)); *see also Olowosuko v. State*, 826 S.W.2d 940, 942 (Tex. Crim. App. 1992) (Overstreet, J., concurring) ("Certainly a deferred adjudication probationer should be entitled to the same protection from any such whimsical capricious revocation.").

[6]     In *Connolly*, the court, noting its line of cases on former section 5(b), stated that it had "tried to make clear that, given the plain meaning of Article 42.12, § 5(b), an appellant whose deferred adjudication probation has been revoked and who has been adjudicated guilty of the original charge, may not raise on appeal contentions of error in the adjudication of guilt process." *Connolly*, 983 S.W.2d at 740. The court expressed its confidence in its interpretation of former section 5(b) because the Legislature had not amended it to overturn the court's interpretation. *Id.* at 741. In light of the Legislature's recent amendment to section 5(b) to allow appellate review as in regular community supervision cases, (*see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon Supp. 2008)), as discussed above, the confidence level in cases interpreting former section 5(b) has been lowered. Grammer, however, does not contest the State's reliance on this line of cases or otherwise challenge it.

adjudication for conduct that Grammer had obtained permission from Friedmann to engage in (associating with Turner) and for his failure to pay court costs while he was incarcerated, Grammer complains that the trial court's decision to proceed to adjudication was based on unreasonable criteria. Despite Grammer's couching his complaint in constitutional terms, and despite our concurrence that the criteria are unreasonable, he cannot appeal the trial court's determination to proceed to adjudication, and we cannot review that decision. We therefore must dismiss issue five.

### Punishment Hearing

Grammer's sixth issue asserts that the trial court abused its discretion in denying him a separate punishment hearing. After the trial court finds the defendant guilty during a hearing on a petition to proceed to adjudication, the defendant is entitled to a punishment hearing after the adjudication of guilt, and the trial judge must allow the accused the opportunity to present punishment evidence. *Issa v. State,* 826 S.W.2d 159, 161 (Tex. Crim. App. 1992). To preserve a complaint that the trial court erred in failing to hold a separate punishment hearing, the defendant must timely object or file a motion for new trial if not afforded the opportunity to object. *Vidaurri v. State,* 49 S.W.3d 880, 885-86 (Tex. Crim. App. 2001); *Hardeman v. State,* 1 S.W.3d 689, 690 (Tex. Crim. App. 1999).

Grammer's amended motion for new trial, which the trial court overruled, asserted that the trial court erred in not allowing Grammer a separate punishment hearing after adjudicating him guilty.

In this case, the evidence on the State's motion concerned Grammer's two violations of community supervision, and the State's cross-examination of Grammer included brief references to his commission of the underlying offenses. While Grammer presented evidence in mitigation of his violations, he did not present "punishment" evidence relating to the underlying offenses. After the presentation of evidence, each side presented argument. The State argued on the violations and suggested a lengthy prison sentence (forty to fifty years); Grammer's counsel argued only about the violations. After argument, the trial court stated:

> Please stand. Mr. Grammer, I'll find that you violated the terms and conditions of your community supervision as alleged in the two motions filed with the Court. Accordingly I will proceed. And I have reviewed the underlying plea and transcript of the plea that you entered before Judge Cooke, and I will proceed to find you guilty beyond a reasonable doubt of the offenses charged in Counts One, Two, and Six, and Three, Four, Five, Seven, Eight, Nine of the Indictment.

> At this time the Court will impose the sentence of 60 years on Counts One, Two, and Six and 20 years on Counts Three, Four, Five, Seven, Eight, Nine. And you will be given credit for the time that you have served today in this case.

> That will be the judgment of the Court. I remand you to the custody of the sheriff to carry out your sentence.

Nothing in the record indicates that the trial court prevented Grammer from presenting punishment evidence or from objecting to not having been afforded the opportunity to present punishment evidence. *See Vidaurri,* 49 S.W.3d at 885-86. He presented evidence before the adjudication and plainly had the opportunity to present punishment evidence then. *See Pearson v. State,* 994 S.W.2d 176, 179 (Tex. Crim. App. 1999) ("It is immaterial that the opportunity to present evidence came before the actual

words of adjudication. . . . Appellant had the opportunity to present evidence during the proceedings. That is all that is required."). Thus, we overrule his sixth issue.

## Conclusion

Having dismissed or overruled all of Grammer's issues, we affirm the trial court's judgment.

BILL VANCE
Justice

Before Chief Justice Gray,
 Justice Vance, and
 Justice Reyna
 (Chief Justice Gray concurs in the Court's judgment which affirms the trial court's judgment of Grammer's conviction. A separate opinion will not issue. Chief Justice Gray notes, however, that this appeal does not contain any issue or discussion that qualifies it as a published opinion. TRAP 47.4. There are, however, three things that are noteworthy in this opinion. First, several of the footnotes are unnecessary and do nothing more than provide legal counsel to Grammer as to how to potentially obtain relief. Second, the opinion unnecessarily criticizes the *ratio decidendi* of a higher court's precedent. It is entirely proper for the other members of the Court to criticize Chief Justice Gray's rationale, but as an intermediate court of appeals Chief Justice Gray believes we should be very careful in expressing criticism of the reasoning for a higher court's decision by which we are bound. And finally, he finds no need or justification to be critical of the trial court's considerations and exercise of the trial court's discretion when a review of that decision is expressly beyond our jurisdiction and is therefore not the proper subject of an issue necessary for the Court's decision. He would omit the unnecessary portions of the opinion and issue it as a memorandum, do not publish, opinion.)
Affirmed
Opinion delivered and filed September 10, 2008
Publish
[CRPM]